# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| IN RE: ) | Case No.  16-20212 EEB |
| ) | Chapter 11 |
| BAKKEN INCOME FUND LLC, ) | |
| EIN: 45-2586259 ) | |
| ) | |
| Debtor. ) | |

## AMENDED AND RESTATED MOTION FOR ORDER (I) AUTHORIZING AND APPROVING PURCHASE AND SALE AGREEMENT; (II) THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (III) AUTHORIZING PAYMENT TO SECURED LENDER; AND (IV) GRANTING RELATED RELIEF

Debtor Bakken Income Fund LLC (the "Debtor"), pursuant to 11 U.S.C. § 105, 363 and 365 and Fed. R. Bankr. P. 2002, 6004, 6006, 9006, and 9014 respectfully moves this Court for entry of an order:  (A) Authorizing and Approving (I) the Purchase and Sale Agreement,; (II) the Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (III) Authorizing Payment to Secured Lender; and (B) Granting Related Relief, including lifting the 14-day stay of the order provided by Rule 6004(h), and finding that the Buyer (as defined below) is a good-faith purchaser protected by Section 363(m) of the Bankruptcy Code (the "Sale Motion")[1]. As grounds for the relief sought herein, the Debtor states as follows:

### Summary of Relief Requested

1.    The Debtor seeks entry of an order authorizing the sale (the "Sale") of substantially all of its assets to Zavanna, LLC ("Zavanna" or the "Buyer") under the terms of a

---

[1] This Motion replaces the MOTION FOR ORDER (I) AUTHORIZING AND APPROVING PURCHASE AND SALE AGREEMENT; (II) THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (III) THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND LEASES; AND (IV) GRANTING RELATED RELIEF filed April 12, 2018 [Dkt. 188].

1

Purchase and Sale Agreement ("PSA") substantially in the form of the PSA attached as **Exhibit 1** hereto. The proposed purchase price for the assets is $2,050,000 (the "Purchase Price"), which Purchase Price is subject to certain adjustments as provided in the PSA. All proceeds of the proposed sale are designated to be paid to the Debtor's primary secured lender, which asserts a lien on the assets to be sold, and a claim in this case in excess of the Purchase Price. BOK has agreed to accept the Purchase Price in full and complete satisfaction of its liens and claims in the case. The assets that are the subject of the sale have been extensively marketed over the course of the case, and no other buyers have emerged. The agreement with BOK for the acceptance of a discounted payoff is of benefit to the estate as there is likely to be cash remaining to satisfy additional claims.

2. The Debtor believes that, given the nature of the industry in which it operates, and given the status of current operations, it is imperative to seek a sale of substantially all of its assets. The failure to consummate a sale is likely to lead to increased administrative and operational expenses and little likelihood that a plan acceptable to BOK can be confirmed. The discounted payoff at the center of the proposed sale is the result of lengthy negotiations between the parties.

3. Additionally, by separate motion, the Debtor seeks authority to assume and assign joint operating agreements and other executory contracts which are included in this Sale. If an agreement to be assigned is not an executory contract for purposes of §365 of the Bankruptcy Code, it will nevertheless be an asset transaction pursuant to §363.

## Background

4. The Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on October 17, 2016 (the "Petition Date").

5. The Debtor continues to manage and operate its businesses as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee or examiner has been requested in these chapter 11 cases, and no committee of unsecured creditors has been appointed.

6. This Court has jurisdiction over this Sale Motion pursuant to 28 U.S.C. §§ 157(b)(2) and 28 U.S.C. § 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

7. The Debtor is an oil and gas investment fund, and although separately constituted, is part of a family of funds in the same regulated industry. The Debtor's revenues are generated from payments received from the operation of oil and gas wells in which the Debtor holds an interest and payable under the terms of various Joint Operating Agreements ("JOA") or North Dakota Industrial Commission pooling orders ("Pooling Orders"). Generally, all revenue received under the terms of these agreements constitute cash collateral against which BOK asserts a lien.

8. Beginning in 2014, supply-side economics and pricing disruptions in the energy sector began to impact negatively the value of the Debtor's property interests, and the revenues received under the JOAs and Pooling Orders. As a result, the Debtor was compelled to enter into workout discussions with its Secured Lender, BOKF, N.A. d/b/a Bank of Oklahoma, N.A. ("**BOK**"), ultimately culminating in a forbearance arrangement. An ongoing dispute with Zavanna over setoff and recoupment rights for wells and related properties operated by Zavanna further complicated the Debtor's cashflow situation. Subsequently, BOK terminated the forbearance arrangement, and informed the Debtor that it would seek appointment of a receiver. The Debtor then sought relief under chapter 11.

9. During the pendency of the case, the Debtor and Zavanna were able to compromise and settle their ongoing dispute under the terms of an agreement approved by the Court. Following the compromise with Zavanna, the Debtor determined it would be in the best interests of the estate, including BOK, to seek the sale of substantially all of its assets. The Debtor believed that stabilizing market conditions supported such an exit strategy and hoped that a formal sales process would yield a value in excess of the BOK claim. Accordingly, the Debtor engaged TenOaks Energy Advisors ("TenOaks") as a sales agent in the summer of 2017.

10. TenOaks undertook a robust and extensive marketing process of the Debtor's assets. The process resulted in 25 separate parties executing confidentiality agreements in order to review information related to the Debtor's assets and operations. Ultimately, these efforts resulted in non-binding expressions of interest that were above market indications of value. Unfortunately, none of these potential buyers decided to move past the post due-diligence stage and to the negotiation of a binding asset purchase agreement.

11. Ultimately, Zavanna emerged as a potential buyer, albeit at a price below the BOK indebtedness. Particularly as to certain wells it operates, Zavanna is familiar with the Debtor's business, its assets, and its operational structure by virtue of its position as a secured creditor, and as a result of its pre-petition relationship with the Debtor. The PSA includes a number of wells and related assets operated by parties other than Zavanna. Fortunately, the Debtor was able to negotiate a discounted payoff with BOK, whereby BOK has agreed to accept the Purchase Price in full satisfaction of its claims in the case.[2]

---

[2] The Bank has agreed to accept $2.05 million in full satisfaction of its claim. Zavanna has offered to pay $2.05 million for the Assets with an effective date of November 1, 2017, and certain price adjustments. Therefore, the Purchase Price (including adjustments) may not be $2.05 million. Zavanna and the Debtor will not be obligated to close if the Purchase Price (with adjustments) is not acceptable to BOK.

48301958.4
16708879

12. The Debtor believes that Zavanna is capable of completing the purchase and closing the transaction by May 31, 2018. It is the Debtor's intention that the full Purchase Price be paid to BOK at closing in full and complete satisfaction of its claim in the case. BOK will release its liens against the Debtor's assets at closing, upon receipt of $2.05 million at closing, or such other lesser amount acceptable to BOK if there is a downward adjustment in the amount paid at closing.

13. Zavanna is not purchasing cash and certain other assets that were transferred to the Debtor post-petition by a related entity (the "Colorado Assets"). The Colorado Assets are not subject to the BOK's security interest and the proceeds from the subsequent sale of the Colorado Assets, together with the Debtor's cash, will be available to pay creditors.

### General Terms of the Purchase and Sale Agreement

14. By this Sale Motion, the Debtor seeks to sell the Assets[3] to Zavanna. The Assets are more fully described in Section 1.2 of the PSA, and include substantially all of the Debtor's assets located in North Dakota including Debtor's interests in all Lands, Leases, Wells, working and mineral interests, rights, overriding royalties and royalties, as well as Hydrocarbons in, arising from, or under the Properties and Equipment related to the Properties, as well as all permits, licenses, related contracts, Records, maps, files, data covering any of portion of the Properties, and rights claims and causes of action relating to any Assumed Liabilities.

15. Upon the closing of the Sale of the Assets, the Debtor will have sold substantially all of its tangible assets (except cash), thereby significantly reducing the costs of administering the remaining estate.

16. As set forth above, the Debtor and Zavanna have executed a PSA substantially in the form of the PSA attached as **Exhibit 1** to this Sale Motion. Zavanna proposes to purchase

---

[3] Capitalized terms not defined in this Motion shall have the meaning ascribed to them in the PSA.

5

48301958.4
16708879

the Assets pursuant to the following terms and conditions, which are briefly described below but are more fully provided for in the PSA:[4]

    a. The Purchase Price for the Assets will be in the amount of $2,050,000, subject to adjustments described in Section 2.3 of the PSA *plus* the Cure Amount, *plus* the assumption of certain liabilities of the Debtor; and

    b. The Sale will be free and clear of any and all liens, claims, interests, Encumbrances and Liabilities pursuant to 11 U.S.C. §363(f), with $2.05 million payable directly to BOK in satisfaction of its secured claims.

17. The Debtor will retain all cash in excess of the Purchase Price. The Debtor's cash is not part of the assets being acquired by Zavanna. Zavanna also is not purchasing the Excluded Assets as defined in the PSA.

## L,B,R, 6004-1 Disclosures

18. The disclosures required by L.B.R. 6004-1 are as follows:

    a. the legal description of the property to be sold as included in Exhibits A, B-1 and B-2 of the PSA;

    b. as described above, TenOaks marketed the Debtor's assets and no auction is contemplated;

    c. Section 13.1 of the PSA provides that the Closing will be held on or before May 31, 2018, which date may be extended by mutual agreement of the Debtor and Zavanna;

    d. Section 6.1 of the PSA provides that the Debtor must file amended schedules no later than April 12, 2018;

    e. the PSA does not require Zavanna to pay a deposit;

    f. the closing obligations contained in Section 13.3 of the PSA require (i) the Debtor to deliver to Buyer original, executed releases for each of the Mortgages in recordable form executed by BOK and (ii) the Debtor to pay the Closing Amount (as defined in Section 2.3(b) of the PSA) by wire transfer in immediately available funds to BOK;

---

[4] The Motion provides only a summary of the terms of the PSA. The PSA should be reviewed in its entirety. To the extent of any inconsistency between the PSA as described in the Motion and the terms contained in the PSA, the PSA shall control.

g. pursuant to Section 9.1(c) of the PSA, the Debtor will have access to its records to the extent necessary to administer the Bankruptcy Case;

h. the Sale Order includes findings limiting any successor liability, as required by the definition of Sale Order in the PSA;

i. the Sale Motion seeks a waiver of the fourteen-day (14) stay imposed by Fed. R. Bank. P. 6004(b).

## Basis for Relief

**A. The Sale is a Proper Exercise of the Debtor's Business Judgment and will Maximize the Value of the Assets for the Benefit of the Debtor's Estate and Creditors.**

27. Entry of the Sale Order approving the final sale of the Assets at the conclusion of the sale hearing is authorized and appropriate under the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Section 1107(a) of the Bankruptcy Code grants a debtor-in-possession the powers of a trustee in respect to various matters including sales under section 363(b) of the Bankruptcy Code.

28. Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of the estate, courts have found that a debtor's sale or use of assets outside the ordinary course of business should be approved if the debtor can demonstrate a sound business justification for the proposed transaction. *See*, *e.g.*, *In re Castre, Inc.*, 312 B.R. 426, 428 (Bankr. D. Colo. 2004); *In re Psychrometric Sys.*, 367 B.R. 670, 674 (Bankr. D. Colo. 2007); *In re Eagle Picher Holdings, Inc.*, 2005 WL 4030132 (Bankr. S.D. Ohio 2005); *In re Martin*, 91 F.3d 389, 395 (3rd Cir. 1996); *In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143 (3rd Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2nd Cir. 1983).

29. In particular, a sale outside of the ordinary course of business should be approved if (i) a sound business reason exists to sell the property; (ii) adequate and reasonable notice of the terms has been given to parties in interest; (iii) the proposed sale price is fair and reasonable; and (iv) the buyer has acted in good faith. *In re Buerge*, 2014 WL 1309694, at *9 (10th Cir. B.A.P. Apr. 2, 2014); *see also In re Colo. Sun Oil Processing LLC*, No. 10–24424–SBB, 2011 WL 3585565, *8 (Bankr. D. Colo. Aug. 12, 2011).

30. Once the Debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *In re S.N.A. Nut Co.*, 186 B.R. 98 (Bankr. N.D. Ill. 1995); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bonier. S.D.N.Y. 1992); *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions").

31. In light of circumstances that precipitated the commencement of these chapter 11 proceedings, the Debtor, in its business judgment, believes that a prompt sale of the Assets, pursuant to section 363(b) of the Bankruptcy Code, will maximize the value of the Assets for the benefit of the Debtor's creditors and bankruptcy estate. Several sound business reasons support the Debtor's position.

32. Based on the results of their analysis of the Debtor's ongoing and future business prospects, the Debtor's management and team of financial advisors have concluded that a sale may be the best method to maximize recoveries and ensure that the value of the Debtor's assets is maintained for the benefit of creditors and their estate. Maximization of asset value is a sound business purpose, warranting authorization of the sale.

33. The Debtor believes that the proposed sale is commercially reasonable and is in the best interest of the Debtor, its estate and creditors and will maximize the value obtained from the sale of the Assets.

34. In addition, all creditors and parties-in-interest will receive adequate notice of the sale hearing as set forth herein. Such notice is reasonably calculated to provide timely and adequate notice to the Debtor's major creditor constituencies, those parties most interested in this chapter 11 case and others whose interests are potentially implicated by a proposed sale. Accordingly, consummating the sale as soon as possible is in the best interests of the Debtor's and their creditors.

35. Finally, the timing of the sale is critical. The Debtor has insufficient cash flow to continue operations on a long-term basis. Without funding to continue operations, the only alternative to a going concern sale is to liquidate the Debtor's assets. The Debtor believes that the proposed Sale will provide a greater return to the Debtor's estate and its creditors than the liquidation of the Debtor's assets. For each of the foregoing reasons, the Debtor, in its business judgment, believes that a prompt sale of the Assets, pursuant to section 363(b) of the Bankruptcy Code, is in the best interest of the Debtor, its estate, creditors and other parties in interest.

**B.    This Court Should Approve the Sale Free and Clear of all Liens, Claims, and Encumbrances Pursuant to Section 363(f) of the Bankruptcy Code.**

36. The Debtor also requests that the Sale Order provide that the sale of the Assets is free and clear of any interest held by any third party in any of the assets to be sold. Specifically, it is contemplated that upon the closing, the Buyer will take title to and possession of the Assets, free and clear of all liens, claims, interests and encumbrances, except as otherwise provided in the PSA.

37. Section 363(f) of the Bankruptcy Code authorizes the sale of property under section 363(b) of the Bankruptcy Code to be free and clear of interests in such property held by an entity if:

   a. Applicable non-bankruptcy law permits a sale of such property free and clear of such interests;

   b. Such entity consents;

   c. Such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

   d. Such interest is in bona fide dispute; or

   e. Such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11. U.S.C. § 363(f).

38. BOK asserts a first-priority lien upon substantially all of the Debtor's assets not otherwise subject to a validly perfected unavoidable lien of a third party. BOK will be paid at closing and, in the event of an upward adjustment in the purchase price, the Debtor will retain the remaining funds after BOK is paid.

39. The sale of the Assets will satisfy section 363(f) of the Bankruptcy Code because any entities holding liens, claims, interests or encumbrances against the Assets will have received notice of the sale. All parties in interest will be given sufficient opportunity to object to the relief requested herein and any such entity that does not object to the sale of the Assets should be deemed to have consented. See *Futuresource LLC v. Reuters Ltd.*, 312 F.3d 281, 285-86 (7th Cir. 2002) ("It is true that the Bankruptcy Code limits the conditions under which an interest can be extinguished by a bankruptcy sale, but one of those conditions is the consent of the interest holder, and lack of objection (provided of course there is notice) counts as consent. It could not be otherwise; transaction costs would be prohibitive if everyone who might have an

interest in the bankrupt's assets had to execute a formal consent before they could be sold.") (internal citations omitted); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (failure to object to sale free and clear of liens, claims and encumbrances satisfies section 363(f)(2)); *Citicorp Homeowners Serv., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same); *see also In re Enron Corp.*, 2003 WL 21755006, at *2 (Bankr. S.D.N.Y. 2003) (order deeming all parties who did not object to proposed sale to have consented under section 363(f)(2)). As such, the Sale of the Assets may be free and clear of all liens, claims, interests and encumbrances except any liabilities expressly assumed by the Buyer, thus satisfying section 363(f)(2) of the Bankruptcy Code.

40. Moreover, a sale of the Assets free and clear may proceed pursuant to section 363(f) of the Bankruptcy Code because creditors with an interest in the sale assets can be compelled to accept money satisfaction of their claims pursuant to section 363(f)(5) of the Bankruptcy Code. See *Scherer v. Fed. Nat'l Mortgage Assoc. (In re Terrace Chalet Apartments, Ltd.)*, 159 B.R. 821, 829 (N.D. Ill. 1993) (holding that pursuant to section 363(f)(5) of the Bankruptcy Code courts may authorize sales free and clear of a secured creditor's lien if such creditor's interest could be crammed down pursuant to section 1129(b)(2) of the Bankruptcy Code); *In re Healthco Int'l, Inc.*, 174 B.R. 174, 176 (Bankr. D. Mass. 1994) (same). Therefore, this Court may authorize the sale pursuant to section 363(f)(5) of the Bankruptcy Code.

41. The Debtor also believes that other provisions of section 363(f) of the Bankruptcy Code may be applicable to and would permit the sale of the Assets. Thus, the sale of the Assets is appropriately free and clear of all liens, claims, interests or encumbrances pursuant to section 363(f) of the Bankruptcy Code.

**C.     Buyer Is Entitled to the Protections of 363(m) of the Bankruptcy Code.**

42.     The Debtor seeks the protections afforded under section 363(m) of the Bankruptcy Code, which provide, in pertinent part:

> (m) The reversal or modification on appeal of an authorization under section (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. 363(m).

43.     In assessing the good faith of a purchaser, courts have considered factors such as (i) whether the sale was negotiated at arm's length; (ii) whether any officer or director of the debtor holds any interest in or is otherwise related to the potential purchaser; and (iii) whether fraud or collusion exists among the prospective purchaser, any other bidders or the trustee. *In re Buerge*, 2014 WL 1309694, at *13. Additionally, the United States Court of Appeals for the Tenth Circuit has defined a good faith purchaser as one who buys (i) "in good faith," i.e., through a sale that does not involve "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders," and (ii) for "value," i.e., by paying "at least 75% of the appraised value of the assets." *In re Bel Air Associates, Ltd.*, 706 F.3d 301, 305 & nn. 11-12 (10th Cir. 1983).

44.     The Debtor submits that the sale of the Assets to Zavanna warrants a finding that the Assets were acquired in good faith within the meaning of section 363(m) of the Bankruptcy Code.  The Debtor has and will continue to aggressively market the sale of the Assets.  Any parties who have expressed any meaningful interest in the acquiring the business and assets will be given notice of the sale.

45. Accordingly, the Sale Order will include a provision that the Buyer is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code. The Debtor believes that providing such protection will ensure that the maximum price will be received by the Debtor for the Assets and closing of the sale will occur promptly.

**WHEREFORE**, the Debtor respectfully request this Bankruptcy Court enter an order (i) authorizing the Debtor to sell the Assets other than in the ordinary course, free and clear of liens, interests, encumbrances and other claims; (ii) authorizing Payment of Proceeds to BOKF, N.A., the secured lender; and (iii) granting such other and further relief as this Court deems just and appropriate under the circumstances.

Dated: April 18, 2018                Respectfully submitted,

BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.

*/s/John Rowland*
John Rowland (TN BPR # 13944)
Baker Donelson Center, Suite 800
211 Commerce Street
Nashville, Tennessee 37201
(615) 726-5544 (telephone)
(615) 744-5544 (facsimile)
Email for ECF purposes:
businessbknash@bakerdonelson.com
Email for all other purposes:
jrowland@bakerdonelson.com

Erno Lindner (TN BPR # 29273)
633 Chestnut Street, Suite 1900 Chattanooga,
Tennessee 37450
(423) 209-4206 (telephone)
(423) 752-9633 (facsimile)
Email: elindner@bakerdonelson.com


*/s/Michael J. Pankow*
Michael Pankow (CO # 21212)
BROWNSTEIN HYATT
FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202-4432
303.223.1106 (telephone)
303.223.0906 (facsimile)
mpankow@bhfs.com

*Attorneys for Debtor*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 18th day of April, 2018, a true and correct copy of the **AMENDED AND RESTATED MOTION FOR ORDER (I) AUTHORIZING AND APPROVING PURCHASE AND SALE AGREEMENT; (II) THE SALE OF ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; (III) AUTHORIZING PAYMENT TO SECURED LENDER; AND (IV) GRANTING RELATED RELIEF** (i) was electronically filed with the Court using the CM/ECF system, which sent notification to all parties in interest participating in the CM/ECF system, (ii) was served by placing same via first class mail postage prepaid properly addressed to all parties identified on the attached mailing matrix and (iii) was served by placing same via first class mail, postage prepaid, and properly addressed to each of the parties identified below.

Gerard L. Gustilo
EOG Resources, Inc.,
1111 Bagby Street, Sky Lobby 2
Houston, TX 77002

EOG Resources
PO Box 840319
Dallas, TX 75284-0319

Foundation Energy Mgmt.
100 Throckmorton St., Suite 400
Fort Worth, TX 76102

Foundation Energy Mgmt.
PO Box 650002, Dept. D8041
Dallas, TX 75265-0002

Horizon Drilling, LLC
c/o Zavanna LLC
c/o Ryan Kackley
1200 17th Street, Suite 1100
Denver, CO 80202

Cecily Warmke
Oasis Petroleum NA
1002 Fannin, Suite 1500
Houston, TX 77002

Oasis Petroleum
Attn: Legal Department
1001 Fannin, Suite 1500
Houston, TX 77002-6739

Kevin A. Smith
Petro-Hunt LLC
2101 Cedar Springs Road, Ste. 600
Dallas, TX 75201

Petro-Hunt
PO Box 650823
Dept. #41404
Dallas, TX 75265-0823

Petro-Hunt, LLC
PO Box 935
Bismarck, ND 58502-0935

Rhonda Perry
Slawson Exploration Company, Inc.
727 N. Waco, Suite 400
Wichita, KS 67203-3900

Split Creek Enterprises, LLC
c/o Zavanna LLC
c/o Ryan Kackley
1200 17th Street, Suite 1100
Denver, CO 80202

Elizabeth Jimenez
Whiting
1700 Broadway, Suite 2300
Denver, CO 80290

Whiting Oil & Gas Corporation
PO Box 973539
Dallas, TX 75397-3539

48301958.4
16708879

Jimmy McCown
XTO Energy
810 Houston Street
Fort Worth, TX 76102

Wesley Wagner
Statoil Oil & Gas LP
2107 City West Blvd., 1st Floor
Houston, TX 77042

Zenergy, Inc.
6100 S. Yale Ave., Suite 1700
Tulsa, OK 74136-1921

Zinke & Trumbo, Inc.
c/o Oasis Petroleum
1002 Fannin, Suite 1500
Houston, TX 77002

North Dakota Department of Trust Lands
1701 North 9th Street
Bismarck, ND 58506-5523

State of North Dakota Office of State Tax Commissioner
600 E. Boulevard Ave.
Bismarck, ND 58505-0599

Montana Department of Revenue
125 N. Roberts
Helena, MT 59604-5805

Roosevelt County Treasurer
400 2nd Ave. South
Wolf Point, MT 59201.

State Historical Society of North Dakota
612 East Boulevard Avenue
Bismarck, ND 58505

University Foundation at Williston, a/k/a Williston State College Foundation
721 East Highland Drive, Suite E
Williston, ND 58802

Pherrin Township Williams County, North Dakota
206 East Broadway
Williston, ND 58801

Bureau of Land Management
5001 Southgate Drive
Billings, MT 59101

*/s/Sheila M. Grisham*
Sheila M. Grisham, Paralegal

48301958.4
16708879

| | | |
|---|---|---|
| Label Matrix for local noticing<br>1082-1<br>Case 16-20212-EEB<br>District of Colorado<br>Denver<br>Wed Apr 18 11:16:48 MDT 2018 | Donald D. Allen<br>1700 Lincoln St.<br>Ste. 4550<br>Denver, CO 80203-4509 | BOkf, NA dba Bank of Oklahoma<br>1625 Broadway<br>Suite 1100<br>Denver, CO 80202-4766 |
| BTA Oil Producers, LLC<br>104 S Pecos Street<br>Midland, TX 79701-5099 | Baker, Donelson, Bearman, Caldwell & Berkowi<br>Baker Donelson Center, Suite 800<br>211 Commerce Street<br>Nashville, TN 37201-1806 | Bakken Income Fund LLC<br>5251 DTC Parkway<br>Suite 200<br>Englewood, CO 80111-2731 |
| Bistate Oil Management Corporation<br>10 E 40th St<br>New York, NY 10016-0200 | Monica S. Blacker<br>Jackson Walker L.L.P<br>2323 Ross Avenue<br>Suite 600<br>Dallas, TX 75201-2725 | Brigham Oil & Gas, LP<br>6300 Bridge Point Pkwy<br>Austin, TX 78730-5027 |
| Brownstein Hyatt Farber Schreck, LLP<br>410 17th Street<br>Denver, CO 80202-4468 | Burlington Resources Oil & Gas Co., LP<br>717 Texas Street<br>Ste 2100<br>Houston, TX 77002-2753 | Peter A. Cal<br>633 17th St.<br>Ste. 3000<br>Denver, CO 80202-3622 |
| Chesapeake Operating, Inc.<br>6100 N Western Avenue<br>Oklahoma City, OK 73118-1044 | Coachman Energy Administrator<br>5251 DTC Parkway<br>Suite 200<br>Greenwood Village, CO 80111-2731 | Coachman Energy Managing General Prtnr<br>5251 DTC Parkway<br>#200<br>Greenwood Village, CO 80111-2731 |
| Coachman Energy Partners<br>5251 DTC Parkway<br>#200<br>Greenwood Village, CO 80111-2731 | Colorado Department Of Revenue<br>1375 Sherman St.<br>Room 504<br>Attention Bankruptcy Unit<br>Denver CO 80261-3000 | Continental Resources, Inc.<br>P.O. Box 269000<br>Oklahoma City, OK 73126-9000 |
| Cynosure Energy<br>1125 17th Street<br>Suite 400<br>Denver, CO 80202-2061 | EOG Resources<br>PO Box 840319<br>Dallas, TX 75284-0319 | Foundation Energy Mgmt<br>PO Box 650002<br>Dept D8041<br>Dallas, TX 75265-0002 |
| IRS<br>PO Box 7346<br>Philadelphia PA 19101-7346 | Eric E. Johnson<br>633 17th St.<br>Ste. 3000<br>Denver, CO 80202-3622 | Samuel M. Kidder<br>410 17th St., Ste. 2200<br>Denver, CO 80202-4432 |
| Eric Lockridge<br>400 Convention St., Ste. 700<br>Baton Rouge, LA 70802-5628 | James T. Markus<br>1700 Lincoln St.<br>Ste. 4550<br>Denver, CO 80203-4509 | Alan K. Motes<br>Byron G. Rogers Federal Building<br>1961 Stout St.<br>Ste. 12-200<br>Denver, CO 80294-6004 |
| Oasis Petroleum<br>Attn: Legal Department<br>1001 Fannin, Suite 1500<br>Houston, TX 77002-6739 | Orrion Energy LLC<br>5555 DTC Parkway - Suite 310<br>Greenwood Village, Colorado 80111-3180 | Michael J. Pankow<br>410 17th St.<br>22nd Fl.<br>Denver, CO 80202-4437 |

| | | |
|---|---|---|
| Petro Hunt<br>PO Box 650823<br>Department #41404<br>Dallas, TX 75265-0823 | Petro-Hunt, LLC<br>P.O. Box 935<br>Bismarck, ND 58502-0935 | Bruce Ruzinsky<br>Jackson Walker L.L.P<br>1401 McKinney Street<br>Suite 1900<br>Houston, TX 77010-1900 |
| Securities and Exchange Commission<br>Midwest Regional Office<br>175 W. Jackson Blvd.<br>Ste. 900<br>Chicago IL 60604-2815 | Security & Exchange Commission<br>Central Regional Office<br>1801 California St.<br>Ste. 1500<br>Denver CO 80202-2656 | SingerLewak<br>3600 S Yosemite<br>#600<br>Denver, CO 80237-1829 |
| Slawson<br>727 N Waco<br>#400<br>Wichita, KS 67203-3900 | Spring Creek Expl. & Prod. Co., LLC<br>1200 17th St.<br>Suite 1100<br>Denver, CO 80202-5811 | US Trustee<br>Byron G. Rogers Federal Building<br>1961 Stout St.<br>Ste. 12-200<br>Denver, CO 80294-6004 |
| Jennifer F. Wertz<br>100 Congress Ave., Ste. 1100<br>Austin, TX 78701-4042 | Whiting Oil & Gas Corporation<br>PO Box 973539<br>Dallas, TX 75397-3539 | XTO Energy<br>PO Box 730587<br>Dallas, TX 75373-0587 |
| Zavanna<br>1200 17th Street<br>Suite 1100<br>Denver, CO 80202-5811 | Zavanna, LLC<br>c/o Sherman & Howard L.L.C.<br>Attn: Peter A. Cal, Esq.<br>633 17th Street, Suite 3000<br>Denver, CO 80202-3622 | Zenergy, Inc.<br>6100 S Yale Ave<br># 1700<br>Tulsa, OK 74136-1921 |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)BOKF, NA dba Bank of Oklahoma, NA | (u)Oasis Petroleum | (u)Orrion, LLC<br>8375 South Willow Street<br>Suite 400 |
| (u)Statoil Oil & Gas LP | (u)TenOaks Energy Advisors, LLC | (u)Zavanna, LLC |

End of Label Matrix
Mailable recipients    44
Bypassed recipients     6
Total                  50